UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SULTONMIRZO RAVSHANBEKOV,

                              Plaintiff,

                -against-

THOMAS A. CIOPPA, New York District Director,
U.S. Citizenship and Immigration Services,

                              Defendant.

Case No. 1:23-cv-06782 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

This matter comes before the Court on the collateral issue of the imposition of sanctions.

On May 10, 2024, Sultonmirzo Ravshanbekov ("Plaintiff" or "Mr. Ravshanbekov") informed the

Court that he believed that his counsel, Nataliya Gavlin ("Gavlin"), had (1) lied about receiving

the Microsoft Teams ("Teams") login for the initial pre-trial conference in this action; and

(2) voluntarily dismissed this action without Plaintiff's permission. Dkt. 19.  On May 20, 2024,

the Court ordered Gavlin to show cause why, given Plaintiff's allegations, she should not be

sanctioned under Federal Rule of Civil Procedure ("Rule") 11, 28 U.S.C. § 1927, and/or the

Court's inherent powers.  Dkt. 20 at 6.  The Court held a hearing on the order to show cause on

June 20, 2024.  Dkt. 41.  The Court concludes that, for the reasons explained below, sanctions on

Gavlin are appropriate under Rule 11, or, in the alternative, under the Court's inherent powers.

## BACKGROUND

The Court generally assumes the parties' familiarity with Plaintiff's allegations and

discusses only those details necessary to explain its decision here.

### I.    Events Before Voluntary Dismissal

On August 2, 2023, Plaintiff sued Thomas A. Cioppa (the "Government").  Dkt. 1 (the

"Complaint").  Plaintiff "request[ed] issuance of a [w]rit of [m]andamus and/or an [o]rder to

[c]ompel under the Administrative Procedure Act" with respect to his asylum application.  *Id.* at 1.  The Complaint was signed by Plaintiff's counsel, Nataliya Gavlin.  *Id.* at 6.  On August 8, 2023, the Court issued an order scheduling the initial pre-trial conference for November 7, 2023.  Dkt. 5 at 1.  On October 6, 2023, the Government moved to dismiss the Complaint under Rule 12(b)(1) and Rule 12(b)(6).  Dkts. 7, 8.  The motion was fully briefed by October 19, 2023.  Dkts. 9-10.

On November 1, 2023, the Court issued an order noting that the parties' deadline to submit certain materials prior to the initial pre-trial conference (as required by the Court's Individual Rules) had passed.  Dkt. 11.  "As a courtesy," the Court "allow[ed] the parties to submit these materials by November 3, 2023."  *Id.*

The Government submitted a letter on November 3, 2023.  The Government reported that it had "made eight unsuccessful telephone calls to the number listed in ECF to try to speak with plaintiff's counsel about the joint submissions due to the Court," but the calls had "not been answered."  Dkt. 12 at 1.  The Government had also "e-mailed counsel several times at the address listed in ECF; each time, [the Government] received a message that the recipient's 'mailbox is full and can't accept messages now.'"  *Id.*  At last, that afternoon, the Government received an email from Gavlin, "but it was non-responsive, indicating that counsel 'would agree to provide [the Government] more time to answer the complaint and do whatever is needed to advance to the next stage of pre trial [sic] conference.'"  *Id.* (second brackets in original).  The Government sent a follow-up email to Gavlin but received no response.  *Id.*  Thus, the Government submitted the required materials without the benefit of input from Plaintiff's counsel.  *See id.* at 2-3.  In its letter to the Court, the Government also requested that the initial pre-trial conference be conducted by telephone or video.  *Id.* at 3.

On November 6, 2023, the Court granted the Government's request to hold the initial pre-trial conference remotely.  Dkt. 13.  The Court stated that counsel would "receive Microsoft Teams log-in credentials to the email addresses listed on the docket."  *Id.*  At no point, before or after that order, did Gavlin contact the Court to request an adjournment or otherwise inform that Court that she could not appear for the conference.

On November 7, 2023, the Court held the initial pre-trial conference as scheduled.  The Government appeared but Gavlin, as representative for Plaintiff, did not.  The following day, the Court issued an order directing "Plaintiff [to] show cause by letter on or before November 17, 2023, as to why this case should not be dismissed for failure to prosecute."  Dkt. 14 (emphasis omitted).

On November 16, 2023, Gavlin submitted a letter opposing dismissal for failure to prosecute.  Dkt. 15 at 1.  Gavlin stated that she was "not able to attend the pretrial conference" because she "never received the [Microsoft Teams] log-in credentials."  *Id.*  As for the failure to timely respond to the Government's pre-conference outreach, Gavlin attributed these "communication issues" to a "high volume of emails" and a "high volume of phone calls, court hearings, asylum interviews and other factors."  *Id.* at 2.  Gavlin assured the Court that she had "notified her office to prioritize emails from [the Government] and instructed them to bring any communication attempt from [the Government] to her immediate attention."  *Id.*

On November 17, 2023, the Court issued an order stating that it would "not dismiss this case for failure to prosecute, although it note[d] that on November 6, 2023, at 10:16 a.m., its courtroom deputy sent the Microsoft Teams meeting credentials in an email to the address" that Gavlin had listed on the docket.  Dkt. 16 at 1.  The Court added that it would "reschedule the

initial pre-trial conference (if necessary) after deciding [the Government's] motion to dismiss."
*Id.*

## II.    Voluntary Dismissal and the Order to Show Cause

On April 22, 2024 — before the Court had resolved the Government's motion to dismiss — Gavlin filed a notice stating that "Plaintiff voluntarily dismisses this action, without prejudice, and without a court order, pursuant to [Rule] 41(a)(1)(A)(i)." Dkt. 17. To remedy a filing error, Gavlin resubmitted a substantially identical notice of dismissal on April 23, 2024, whereupon the Clerk of Court closed the case. Dkt. 18.

On May 16, 2024, the Court received a letter from Mr. Ravshanbekov dated May 10, 2024. Dkt. 19. Plaintiff stated that he was "writing to inform the court about possibly illegal actions of [his] counsel Nataliya Gavlin." *Id.* at 1. Plaintiff claimed that "Gavlin knowingly lied to [him] and to the honorable Judge about not receiving the email containing Microsoft Teams log-in credentials," because Gavlin had "informed [Plaintiff] that she indeed received the email containing the log-in credentials and the actual reason why she did not attend the pretrial conference was that she was on a flight from New York to Miami at the time the conference was held." *Id.*

Plaintiff also reported that in March 2024, "Gavlin informed [Plaintiff] that she would not want to communicate with [him] regarding anything and on April 12, 2024, for the second time, she requested [that Plaintiff] not contact her again." *Id.* According to Plaintiff, his "understanding was that [Gavlin] withdrew herself from [his] case." *Id.* But on May 7, 2024, "while checking for updates on [his] case on pacermonitor.com, [Plaintiff] discovered that Mrs. Gavlin filed a Stipulation of Voluntary Dismissal" and that his case had been terminated. *Id.* at 2. Plaintiff avers that Gavlin "never communicated with [him] regarding the filing of a Stipulation of Voluntary Dismissal and filed the stipulation without [his] knowledge or [his]

consent." *Id.* ("Mrs. Gavlin was well aware that I never wanted to voluntarily dismiss my case and I never informed or instructed her to do so. She never consulted me regarding voluntary dismissal of my case. She even failed to inform me that my case was dismissed. . . . Mrs. Gavlin took it [in]to her own hands to voluntarily dismiss my case without my knowledge and/or approval."). Plaintiff added that on May 7, 2024, he "delivered an Official Request Letter to Mrs. Gavlin's office" requesting an explanation, but that he had not yet received a response. *Id.* Plaintiff requested that the Court "hold Mrs. Gavlin accountable and discipline her for knowingly lying to her client, the honorable court, the US Government, and to the opposing counsel" and issue "any relief that the court deems proper and necessary." *Id.*

On May 20, 2024, the Court issued an order to Gavlin to show cause by June 20, 2024, why, given Plaintiff's allegations, she should not be sanctioned under Rule 11, 28 U.S.C. § 1927, and/or the Court's inherent powers. Dkt. 20 at 6. The Court also invited the Government to submit its views by the same date. *Id.* at 7.[1]

On June 1, 2024, Gavlin provided a written submission in response to the order to show cause. Dkt. 25. As to Plaintiff's first allegation, that Gavlin had misrepresented to the Court about why she missed the initial pre-trial conference, Gavlin contended that she "ha[d] not lied to this Court at any point during these proceedings" and had missed the initial pre-trial conference on November 7, 2023, because she "did not receive the [Microsoft Teams] log-in credentials to be

---

[1] The Government, in its response, took "no position on the issue of whether sanctions should issue" and explained that "[s]ince November 2023, the only communication between the government and Ms. Gavlin regarding this case was an unsolicited e-mail from Ms. Gavlin . . . on April 21, 2024, stating that she 'would like to dismiss the case at this point' and asking if the government could submit a stipulation to her 'so [she] could sign it.'" Dkt. 23. In response to Gavlin's email, "the government provided plaintiff's counsel with an example of a Notice of Voluntary Dismissal pursuant to [Rule] 41(a)(1)(A)(i), which would not require the government's signature to be effective." *Id.*

able to join the conference." *Id.* at 2.  In response to Plaintiff's second allegation, that she had

voluntarily dismissed the action without his permission, Gavlin asserted that she and Plaintiff

"agreed that a voluntary dismissal of his mandamus action will be filed" after a conversation on

March 22, 2024, in which Gavlin informed Plaintiff she was no longer willing to represent him.

*Id.* at 4-5.

On June 3, 2024, the Court ordered Plaintiff, Gavlin, and counsel for the Government to

appear for a hearing on June 14, 2024, regarding the Court's order to show cause.  Dkt. 26.

Gavlin stated that she was unable to appear on that date and asked for an alternative hearing date.

Dkt. 27.  The Court granted her request and moved the hearing to June 12, 2024.  Dkt. 28.

Subsequently, the Government sought an adjournment to June 20, 2024, which the Court also

granted.  Dkts. 31, 33.

On June 5, 2024, Plaintiff submitted a letter to the Court in which he responded to

Gavlin's letter of June 1, 2024.  Dkt. 34.  Plaintiff stated that at the meeting between himself and

Gavlin on March 22, 2024, Gavlin informed Plaintiff "that she no longer wishes to communicate

with [him]," but "she never mentioned dismissing [his] mandamus case nor did [he] in any way

agree to dismiss it." *Id.* at 5.  He also reemphasized that when he discussed the initial pre-trial

conference with Gavlin, she told him that "she actually received the log-in credentials on

November 6, 2023," and "the actual reason for her not to attend the pretrial conference was that

she was in a flight from New York to Miami when the conference was held." *Id.* at 6.

### III.    Hearing on the Order to Show Cause

The hearing on the order to show cause took place on June 20, 2024.  Dkt. 41 ("Hearing

Tr.").  Gavlin testified that at the March 22, 2024 meeting, she told Plaintiff that she "would

dismiss his mandamus claim . . . [and] give him a chance to retain new counsel so he can refile it

if he chose to do so."  Hearing Tr. at 8:19-9:2.  The Court asked what "exactly" Gavlin had said

to Plaintiff and what Plaintiff said in response. *Id.* at 10:6-7. Gavlin said she told Plaintiff "I no longer want to represent you on any level," and Plaintiff said "I understand" or "OK." *Id.* at 10:11-20. When the Court followed up and asked how she knew Plaintiff approved a voluntary dismissal of the lawsuit, Gavlin stated it was "[b]ecause I told him that I did not want to continue representing him, and I told him that I will stop all the work that has been done." *Id.* at 14:5-12. In response to the Court's question about whether she ever told Plaintiff that she was going to dismiss the case, Gavlin stated that "by saying that I will stop all the work, he would understand that it would imply dismissal . . . . My point of stopping was to stop it, not just withdraw and allow him to continue . . . , but terminate it to where he can go ahead and retain new counsel to properly present his rights before this court." *Id.* at 16:2-8. In response to the Court's questions, she then admitted that she did not tell Plaintiff he needed to refile the case if he wished to continue with it. *Id.* at 16:25-17:18.

The Court asked Gavlin why she dismissed the suit instead of just withdrawing as counsel. *Id.* at 9:5-7. Gavlin stated it was "[b]ecause during our conversation, I told him that I will do that. I didn't want to free [*sic*] represent him. I didn't want him to continue on this case that I started for him out of my good heart, and I did not want him to continue on that." *Id.* at 9:8-12; *see also id.* at 10:2-5. Gavlin confirmed that she understood that withdrawing as counsel and dismissing a lawsuit were "two different things" and that she had previously filed motions to withdraw as counsel in other cases. *Id.* at 17:23-18:2, 18:18-19:2.

Gavlin recorded the March 22, 2024 conversation and offered to provide a recording of the conversation to the Court, although it was incomplete. *Id.* at 11:1-25. She was not sure whether the discussion as to voluntarily dismissal was reflected on the recording. *Id.* at 13:9-13. Gavlin later submitted the recording to the Court via email on June 27, 2024. The recording

reflects only that Gavlin said that she was "done" with Plaintiff but does not contain a statement from Gavlin informing Plaintiff that she intended to file a voluntary dismissal of the case, nor does Plaintiff give Gavlin his authorization to file a voluntary dismissal in the recording.

As to the initial pre-trial conference, Gavlin also confirmed during the order to show cause hearing that she understood the conference would be virtual, received notice through ECF that she would receive login credentials, and received notice that there was a public listen-only line. *Id.* at 21:23-22:18. She stated she did not realize the public line was "another option to join in." *Id.* at 26:9-12. Gavlin testified that she never received the email from the Court's courtroom deputy with Teams login credentials but did not follow up with the Court or take any further action when she did not receive login credentials. *Id.* at 22:22-23:21. She also stated that her flight to Miami was at 7:00 AM and it would have landed prior to the 10:00 AM hearing, although she could not recall the airline on which she traveled. *Id.* at 25:7-20.

When Plaintiff testified, he confirmed that at the March 22, 2024 meeting, Gavlin had told him she did not want to represent him anymore in his action before this Court, and that he said "OK" in response. *Id.* at 37:3-7. He understood that to mean "that she would withdraw herself as [his] attorney." *Id.* at 37:8-12. Plaintiff testified that Gavlin never told him that she was going to dismiss the case, and he does not recall her ever saying that he would need to refile the case if he wanted to continue with his suit. *Id.* at 37:19-38:5. He was never shown any dismissal papers before they were filed. Id. at 38:25-39:2. He "never even thought that, without [his] permission, [Gavlin] would ever be able to dismiss [his] case," *id.* at 38:10-12, and the first time that he learned that his case was dismissed was May 7, 2024, when he checked Pacermonitor.com, *id.* at 38:13-24. He was "shocked" and immediately wrote to the Court. *Id.*

at 39:19-24.  Plaintiff also sent a letter to Gavlin on May 7, 2024 advising her that he never authorized dismissal of the case; Gavlin read it, but "did not do anything." *Id.* at 29:4-15.

Plaintiff also stated that he had a conversation with Gavlin in November 2023 in which she stated that he had received the Teams login credentials. *Id.* at 42:18-44:4.  He testified that he had not looked in Gavlin's email to check for login information prior to the November 7 initial pre-trial conference. *Id.* at 50:1-3.

## LEGAL STANDARDS

The Court has jurisdiction to consider whether sanctions are appropriate here notwithstanding that the case was closed upon the filing of the voluntary dismissal.  The "voluntary dismissal of a complaint . . . does not preclude the district court from considering collateral issues such as sanctions." *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014); *see also Rice v. NBCUniversal Media, LLC*, No. 19-cv-00447 (JMF), 2019 WL 3000808, at *4 (S.D.N.Y. July 10, 2019) (same).

"Under Rule 11, a court may sanction an attorney for, among other things, misrepresenting facts or making frivolous legal arguments." *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 459 (S.D.N.Y. 2023) (quoting *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013)).  Rule 11(b) states that "[b]y presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the pleading, written motion, or other paper "is not being presented for any improper purpose," "the claims, defenses, and other

legal contentions are warranted by existing law," and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b), (b)(1)-(3).

If, "after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated," Rule 11 permits the Court to impose sanctions on any "attorney, law firm, or party" that violated the Rule or is responsible for the violation, and to initiate sanctions proceedings *sua sponte*. Fed. R. Civ. P. 11(c)(1), (c)(3); *see In Re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) ("A sanction proceeding may also be initiated by a court on its own motion by issuance of a show cause order."). "In doing so, it must resolve all doubts in favor of the signer." *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-cv-07962 (RA), 2024 WL 4265646, at *6 (S.D.N.Y. Sept. 23, 2024) (internal quotation marks omitted). When a court initiates Rule 11 sanctions *sua sponte*, "a heightened standard applies: '[T]he court must make a finding of [subjective] bad faith on the part of the attorney before imposing the sanctions.'" *Id.* (brackets in *Dakus*) (quoting *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 543 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 822 (2024)). Courts in this Circuit have found bad faith in a variety of circumstances, including cases in which counsel had "actual knowledge" that "he was advocating a pleading that relied on falsehoods." *Id.* (citation omitted).

A court can also sanction an attorney pursuant to its inherent powers. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 948 F.3d 1338, 1345 (2d Cir. 1991). In exercising its inherent powers, a court may sanction a party "when it 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *City of New York v. Fleet Gen. Ins. Grp., Inc.*, No. 19-cv-06629 (RPK), 2024 WL 4362490, at *4 (E.D.N.Y. Sept. 30, 2024) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). "To circumscribe the exercise of this power with reasonable limits, the Second Circuit has 'always required a particularized showing

10

of bad faith to justify the use of the court's inherent power.'" *Wood v. Brosse U.S.A., Inc.*, 149 F.R.D. 44, 49 (S.D.N.Y. 1993) (quoting *International Bhd.*, 948 F.2d at 1345). "Bad faith must be proved by 'clear and convincing evidence.'" *Fleet Gen.*, 2024 WL 4362490, at *4 (quoting *Yukos Corp. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020)).[2]

## DISCUSSION

### I.    The Initial Pretrial Conference

The Court concludes that Gavlin's representations to this Court regarding her ability to attend the initial pre-trial conference do not amount to sanctionable conduct. Based on the record presented, the Court does not conclude that Gavlin's representations about her inability to attend the initial pre-trial conference were made in bad faith. At the evidentiary hearing on the order to show cause, Gavlin represented, under oath, that she did not see the email sent by the Court's courtroom deputy with the Teams login information sent on November 6, 2023, did not realize that the public access line could be used to join the call, and was not on a flight during the hearing on November 7, 2023. Hearing Tr. at 22:2-23:21, 25:3-20, 26:3-12. Despite the evidence in the record that the Teams login information from the Court was sent to the correct email, *see* Dkt. 19 at 12, Gavlin testified that she did not see it until it was filed with Plaintiff's letter of May 10, 2024, Hearing Tr. 23:12-20. Gavlin's actions may have been disorganized, careless, or inattentive, but the Court cannot say they amount to bad faith. As a result, the Court

---

[2] Under 28 U.S.C. § 1927, a court may sanction an "attorney or any other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously" and require them to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Court concludes that Gavlin's actions did not "multipl[y] the proceedings," 28 U.S.C. § 1927, and no additional counsel fees were incurred by Plaintiff; therefore, the Court does not consider sanctions under Section 1927.

declines to impose sanctions based on Gavlin's statements to the Court about whether she received the Teams login information and was able to join the initial pre-trial conference.

## II.    Voluntary Dismissal

However, the Court concludes that Gavlin acted in bad faith by filing a Notice of Voluntary Dismissal without her client's authorization.  The Second Circuit has explained that "unlike many other acts that an attorney undertakes on a client's behalf, the decision to settle *or otherwise dismiss claims* 'rests with the client' and is 'not automatically bestow[ed] . . . on retained counsel.'"  *Gomez v. City of New York*, 805 F.3d 419, 424 (2d Cir. 2015) (emphasis added) (quoting *Pereira v. Sonia Holdings Ltd.*, 91 F.3d 326, 329 (2d Cir. 1996)); *see also Bahl v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, No. 14-cv-04020 (NRM), 2024 WL 866137, at *4 (E.D.N.Y. Feb. 28, 2024) (same).  And the New York Rules of Professional Conduct require counsel to "promptly inform" the client "of . . . material developments in the matter"; "abide by a client's decision concerning the objectives of representation," including "a client's decision whether to settle a matter"; and "consult with the client as to the means by which [the objectives of representation] are to be pursued."  N.Y. R. Pro. Conduct §§ 1.4(a)(1)(iii); 1.2(a); *see also Castro v. Outdoorsmans Resale, Inc.*, No. 23-cv-03516 (JMF), 2024 WL 659943, at *3 (S.D.N.Y. Feb. 16, 2024) (same).  "While it is certainly permissible, and indeed routine, for lawyers to sign voluntary dismissals on their clients' behalf, that signature is intended to represent *their clients' decision* to voluntarily dismiss the action; in other words, attorneys are acting merely as their clients' agents."  *Mora v. Bareburger Grp. LLC*, No. 16-cv-04373 (FB) (RML), 2018 WL 4522086, at *3 (E.D.N.Y. July 12, 2018) (emphasis added), *report and recommendation adopted in relevant part*, 2018 WL 4954088 (E.D.N.Y. Oct. 11, 2018).

Both parties testified at the evidentiary hearing that at their meeting on March 22, 2024, Gavlin told Plaintiff only that she did not want to represent him anymore.  *See* Hearing Tr. 14:6-

18:8 ("I told him that I did not want to continue representing him, and I told him that I will stop all the work that has been done."), 37:4-38:5 (Plaintiff testifying that Gavlin told him "she does not want to represent me anymore").  But Gavlin never told Plaintiff that she would be dismissing the case, never showed him a copy of the voluntary dismissal submission, and never received his permission to dismiss the case.  *Id.* at 15:5-16:20, 19:2-9, 38:25-39:2  When the Court asked Gavlin the basis for her authority to dismiss the case, Gavlin stated only that it was the "[t]ermination of our relationship."  *Id.* at 19:3-9.  By advising Plaintiff that she no longer wished to represent him, Gavlin did not advise her client that she would be dismissing his case or his receive authorization to do so.  The Court finds that this action was taken in bad faith because Gavlin knew that withdrawing from representing a client was different than dismissing the entire case and nonetheless dismissed the case after telling Plaintiff only that she no longer wished to represent him.  *Id.* at 17:19-18:2; 18:18-19:1 (Gavlin acknowledging that withdrawing as counsel is different than dismissing a case and stating that she has filed motions to withdraw as counsel in the past where the case then continued).  Plaintiff's prompt action in notifying the Court (and Gavlin) that he had not given permission to Gavlin to voluntarily dismiss his case further weighs in favor of Plaintiff's claim that he did not authorize Gavlin's filing.  *Compare* Hearing Tr. 30:19-24 (explaining the same day Plaintiff discovered on ECF that his case had been dismissed, he wrote and delivered a letter to Gavlin "in order to get a response and, if possible, to reopen my case"), *with Bahl*, 2024 WL 866137, at *5 (six-month delay between notice of claim withdrawal and raising concerns with the court weighed against finding that attorney wrongfully withdrew claims).

   As a result, Gavlin's submission of a notice of voluntary dismissal without her client's permission violated Rule 11 as the notice was submitted for the "improper purpose" of

dismissing Plaintiff's action without his permission, despite knowing that permission was required. *See* Fed. R. Civ. P. 11(b)(1). Gavlin also failed to comply with her professional responsibility to her client because she never informed Plaintiff that she had filed the notice of voluntary dismissal, "in violation of the Rule requiring that a lawyer 'promptly inform' his client 'of . . . material developments,'" *Castro*, 2024 WL 659943, at *3 (quoting N.Y. R. Pro. Conduct § 1.4(a)(1)(iii)), and by filing it without authorization from Plaintiff or consultation with him, see N.Y. R. Pro. Conduct. § 1.2(a). Gavlin knew she required authorization to file a notice of voluntary dismissal, admitted that she had only told Plaintiff she "did not want to continue representing him," Hearing Tr. 14:10-11, and yet filed the notice of voluntary dismissal anyway. Gavlin is an experienced lawyer and knows the difference between withdrawing as counsel and dismissing a case. She acted in bad faith by filing a voluntary dismissal without Plaintiff's permission — divesting the Court of authority to reopen the case and requiring her client to file a new action to continue[3] — without even informing him that she had done so. Sanctions are appropriate under Rule 11, or, in the alternative, under the Court's inherent powers. *See Rankin v. City of Niagara Falls*, 569 F. App'x 25, 27 (2d Cir. 2014) (summary order) (imposition of sanctions *sua sponte* justified where counsel knew representations in motions for extensions were misleading at the time she made them); *cf. Soliman v. Ebasco Servs. Inc.*, 822 F.2d 320, 323 (2d Cir. 1987) ("When a [material action] is [taken] without the client's authorization and, in

---

[3] *Alix v. McKinsey & Co.*, 470 F. Supp. 3d 310, 317 (S.D.N.Y. 2020) ("A stipulation of dismissal filed under Rule 41(a)(1)(A)(i) or (ii) is self-executing and immediately strips the district court of jurisdiction over the merits." (citation omitted)).

fact, as here, over the client's express statement that the [material action] was without her permission, there can be no question that sanctions are appropriate.").

The Court concludes that Gavlin should be required to complete, within six months of the date of this decision, a minimum of two hours of continuing legal education ("CLE") on issues relating to ethics and professionalism.  Such CLE must not be counted towards, and will be in excess of, her CLE requirements for the state bar to which she belongs.  The CLE must be approved by state CLE authorities.  *See, e.g.*, *Castro*, 2024 WL 659943, at *4 (imposing a similar sanction); *Perez v. Edwards*, No. 20-cv-01359 (LJL), 2023 WL 5935029, at *6 (S.D.N.Y. Sept. 12, 2023) (imposing a similar sanction and citing cases).  Gavlin shall file an affidavit attesting to her fulfilment of the foregoing requirements and serve Plaintiff with a copy of this Opinion and Order.  Failure to comply with any of the foregoing requirements may result in additional sanctions.

## CONCLUSION

For the foregoing reasons, the Court orders the following sanctions pursuant to Rule 11, or, alternatively, its inherent authority:

1.  By October 25, 2024, Gavlin shall send to Plaintiff via first-class mail this Opinion and Order and file an affidavit of service;

2.  By April 17, 2025, Gavlin shall complete a minimum of two hours of CLE on ethics and professionalism; and

3.  No later than April 18, 2025, Gavlin shall file an affidavit attesting to her fulfilment of the foregoing requirement; the certification shall include copies of the certificates of attendance.

Dated: October 18, 2024
       New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge